UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60016-CR-ZLOCH

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

                                                  **O R D E R**

AARON WALL IV,

    Defendant.

_____/

THIS MATTER is before the Court upon Defendant Aaron Wall IV's First Particularized Motion To Suppress Evidence And Statements (DE 63). An evidentiary hearing was held on October 6, 2008. The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

Defendant Aaron Wall IV sought to suppress evidence obtained by law enforcement and asserted three arguments: 1) all evidence seized from Wall's person should be suppressed because law enforcement did not have probable cause to arrest him; 2) the post-arrest statements made by Wall should be suppressed because they were made after an illegal arrest and without valid notice of his <u>Miranda</u> rights; and 3) all information, including text messages, seized from Wall's cell phones should be suppressed because law enforcement failed to obtain a search warrant. At the conclusion of the hearing, the Court granted the instant Motion to the extent it sought suppression of text messages seized from Wall's cell phones and denied the Motion in all other respects. The Court enters this Order to articulate its reasoning.

I. <u>Background</u>

In January of 2008, co-Defendant Robert Allan began discussing a plan to purchase several kilograms of cocaine from an individual who, unbeknownst to Defendants, was acting as a cooperating source (hereinafter "CS") for the Drug Enforcement Administration (hereinafter "DEA"). Allan and the CS engaged in cell phone conversations, and on January 10, 2008, Allan and Wall drove from Georgia to South Florida to purchase the cocaine. During the trip, Allan made several cell phone calls to the CS. Upon their arrival, Allan and Wall checked into a motel for the night. The next day, Allan received another call from the CS, who informed him that a representative of the CS, an undercover DEA agent (hereinafter "UC"), would complete the transaction. Later that day, Allan received a call from the UC, and during the conversation Allan gave the phone to Wall to take down directions from the UC.

Upon arriving at the meeting place in a pickup truck, Wall dropped off Allan, who walked to an agreed upon location where he met the UC. Wall remained in the truck as the UC and Allan discussed the deal. After receiving the go ahead from Allan, Wall drove over and parked next to the UC's car. Allan then opened the rear passenger side door and showed the UC a bag filled with cash. Thereafter, the UC gave a takedown signal and Allan and Wall were arrested by DEA agents. Law enforcement performed a search of their persons and the truck incident to the arrest. Among the items recovered from Wall were two cell phones, admitted at trial

as Government's Exhibits 10 and 11.

After the arrest, law enforcement advised Wall of his <u>Miranda</u> rights, and Wall signed a document waiving those rights, introduced at trial as Government's Exhibit 8.  After waiving his <u>Miranda</u> rights, Wall made the following vague inculpatory statement: "I had to pay the bills, and I did something."  During the booking process, DEA Special Agent Dave Mitchell performed a search of the cell phones recovered from Wall.  Agent Mitchell discovered and photographed several text messages on the phones.

## II. <u>Analysis</u>

### A.

The Court finds that the facts and circumstances leading up to Wall's arrest are sufficient to constitute probable cause for the arrest.  All that is required is "a reasonable ground for belief of guilt," <u>Maryland v. Pringle</u>, 540 U.S. 366, 371 (2003), that is, a "probability, and not a prima facie showing, of criminal activity." <u>Illinois v. Gates</u>, 462 U.S. 213, 235 (1983).  Further, based on the testimony and evidence, which the Court found credible, Wall made a knowing and intelligent waiver of his <u>Miranda</u> rights.  Thus, the Court will neither suppress the evidence seized incident to Wall's arrest in its entirety, nor his post-arrest statement.  <u>Pringle</u>, 540 U.S. at 371.

### B.

Criminal defendants have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches

3

and seizures." U.S. Const. amend. IV. As a general rule, a search by a police officer is only reasonable if he first obtains a warrant from a neutral and detached magistrate authorizing the search. Coolidge v. New Hampshire, 403 U.S. 443, 449-53 (1971); Mincey v. Arizona, 437 U.S. 385, 390 (1978). However, there are certain "specifically established and well-delineated exceptions" to the warrant requirement. Katz v. United States, 389 U.S. 347, 357 (1967).

First, upon a lawful custodial arrest, police may search the individual and the area within his reach. United States v. Robinson, 414 U.S. 218, 224 (1973). This can include the passenger compartment of the vehicle in which he was riding immediately prior to his arrest. New York v. Belton, 453 U.S. 454, 460-61 (1981). Such a search incident to a lawful arrest "is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a 'reasonable' search under that Amendment." Id. at 459 (quoting Robinson, 414 U.S. at 235). A warrantless search incident to arrest is justified by the need to remove weapons and prevent the concealment or destruction of evidence. Id. at 457. Thus, to be upheld, a search incident to arrest must be contemporaneous to the arrest. Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003) (search of bedroom invalid as incident to arrest because not contemporaneous with, or conducted in vicinity of, arrest).

Second, when a suspect is brought to the stationhouse for booking and detention, law enforcement may remove and itemize all

4

property found on the person or otherwise in his possession. <u>Illinois v. Lafayette</u>, 462 U.S. 640, 646 (1983). One of the key government interests supporting such inventory searches is the need to account for all property in an arrested person's possession to guard against theft or false claims as to what was taken by the police. <u>Id.</u> During an inventory search, it is customary for officers to sift through bags and purses to document the contents inside. <u>Id.</u>

Third, a search may be conducted without a warrant consistent with the Fourth Amendment when exigent circumstances exist, such as the threat that evidence will be destroyed. <u>United States v. Reid</u>, 69 F.3d 1109 (11th Cir. 1995). Such searches are justified by the futility of seeking out a judicial officer to obtain a warrant before crucial evidence is destroyed. <u>See, e.g.</u>, <u>Warden v. Hayden</u>, 387 U.S. 294, 298-99 (1967) (upholding evidence obtained in a warrantless search because the "Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others"). Thus, an exception to the warrant requirement exists when evidence is in danger of being destroyed before a warrant can be obtained.

The instant Motion (DE 63) presents the question of whether an exception to the Fourth Amendment warrant requirement permits law enforcement to search the information stored on a cell phone

5

without a warrant.[1]  There is no guidance from the Eleventh Circuit on this issue, and the majority of caselaw relevant to this case concerns searches of pagers, not cell phones.  See, e.g., United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996).  The concern that evidence may be destroyed has shaped how courts have dealt with warrantless searches of pagers and cell phones.

The Seventh Circuit has permitted the admission of phone numbers found on a pager during a warrantless search at the time of the arrest.  United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996).  The court reasoned that pagers have a finite memory, and new incoming pages can potentially destroy previously stored numbers.  Id.  Thus, the court there found it necessary for law enforcement to immediately search pagers to prevent the destruction of evidence.  Id.  The Fifth Circuit has extended the holding of Ortiz to searches of cell phones.  United States v. Finley, 477 F.3d 250, 260 (5th Cir. 2007).  However, the Finley court did not explain why cell phones should be treated the same as pagers for purposes of the Fourth Amendment.

After the Finley opinion was entered, a court in the Northern District of California distinguished cell phones from pagers and suppressed the information retrieved from the cell phones.  United States v. Park, 2007 WL 1521573 (N.D. Cal. 2007).  In Park, the

---

[1] The Government does not contest that the viewing of Wall's text messages by Agent Mitchell constitutes a "search" within the meaning of the Fourth Amendment.

court found that cell phones can store a great quantity of information, and the government made no showing that the search was necessary to prevent the destruction of evidence. Id. at *9. The court further found that the search of the cell phones could not be considered an inventory search, because such searches are used to document possessions of a person in custody, not as a "ruse for a general rummaging in order to discover incriminating evidence." Id. at *10 (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)).

To determine if the search was valid, the Court has considered whether a search incident to an arrest, an inventory search, or exigent circumstances provide an exception to the warrant requirement in this case. Further, the Court has taken into account the testimony Agent Mitchell gave at the evidentiary hearing regarding his reasons for searching the cell phones for text messages: 1) he regularly performs searches as an investigative measure because it is common to find evidence of a crime in text messages; 2) it is a standard practice of the DEA and is authorized by the DEA Legal Department so long as the search is performed during the booking process; 3) he was concerned that the text messages might expire after a certain amount of time; and 4) the cell phone battery may die.

The Court declines to adopt the reasoning of Finley and extend law to provide an exception to the warrant requirement for searches of cell phones. The search of the cell phone cannot be justified as a search incident to lawful arrest. First, Agent Mitchell

7

accessed the text messages when Wall was being booked at the stationhouse.  Thus, it was not contemporaneous with the arrest. Kucynda, 321 F.3d at 1082.  Also, the justification for this exception to the warrant requirement is the need for officer safety and to preserve evidence. Agnello v. United States, 269 U.S. 20, 30 (1925) (recognizing the long-held right of law enforcement "to find and seize things connected with the crime . . . as well as weapons and other things to effect an escape from custody").  The content of a text message on a cell phone presents no danger of physical harm to the arresting officers or others.  Further, searching through information stored on a cell phone is analogous to a search of a sealed letter, which requires a warrant. See United States v. Jacobsen, 466 U.S. 109, 114 (1984).

The Court further finds that the search of text messages does not constitute an inventory search.  The purpose of an inventory search is to document all property in an arrested person's possession to protect property from theft and the police from lawsuits based on lost or stolen property.  This of course includes cell phones.  However, there is no need to document the phone numbers, photos, text messages, or other data stored in the memory of a cell phone to properly inventory the person's possessions because the threat of theft concerns the cell phone itself, not the electronic information stored on it.  Surely the Government cannot claim that a search of text messages on Wall's cell phones was necessary to inventory the property in his possession.  Therefore,

the search exceeded the scope of an inventory search and entered the territory of general rummaging.  <u>Wells</u>, 495 U.S. at 4.

Regarding the potential for destruction of evidence, at the evidentiary hearing the Government failed to establish that the text messages at issue would have been destroyed absent Agent Mitchell's intervention.  The differences in technology between pagers and cell phones cut to the heart of this issue.  The technological developments that have occurred in the last decade, since <u>Ortiz</u> was decided, are significant.  Previously, there was legitimate concern that by waiting minutes or even seconds to check the numbers stored inside a pager an officer ran the risk that another page may come in and destroy the oldest number being stored.  This was based on a platform of first-in-first-out storage of numbers used for pagers.  Text messages on cell phones are not stored in the same manner.  Although there was limited testimony as to how cell phones store text messages, because neither the Government nor the Defendant called an expert in such matters to testify, DEA Special Agent Richard Newsome testified that if a text message is not deleted by the user, the phone will store it.  He further stated that his phone contained messages that were at least two months old.

Based on the evidence adduced at the hearing, the Government failed to bear its burden of proving any exigent circumstances surrounding the search for the text messages. Once Wall was in the custody of police officers, and the phones were removed from his

9

possession, he could no longer exercise any control over them. Thus, the threat that messages would be destroyed was extinguished once law enforcement gained sole custody over the phones.  Further, Agent Mitchell did not have a reasonable basis for believing that text messages would have been destroyed in the interim if a warrant was obtained.  In fact, his testimony established that it is his practice to search cell phones for text messages primarily because DEA's policy allows for it and because it is common to find text messages that further the investigation.

The Court finds Agent Mitchell's statement that he searched the phone because of his concern that text messages might immanently expire is not credible.  The Court finds by a preponderance of the evidence that the true, and only, purpose of the search by Agent Mitchell was to find incriminating evidence. A search of the electronic memory of a cell phone does not properly fit within the scope of an inventory search or a search incident to an arrest.  The DEA policy on rummaging through cell phones during the booking process cannot immunize an otherwise unconstitutional search.  In addition, there were no exigent circumstances to justify a warrantless search.  This finding is made based on the Government's own witness Agent Newsome, who stated that text messages will be retained in the memory of a cell phone until the user deletes them.  With Wall in custody, that was no longer a danger.  For these reasons, the Court suppressed the text messages

obtained from Wall's cell phones.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Defendant Aaron Wall's First Particularized Motion To Suppress Evidence And Statements (DE 63) be and the same is hereby **GRANTED** in part and **DENIED** in part as follows:

1. The text messages obtained from Aaron Wall's cell phones and memorialized in Government Exhibits 12, 13, 14, 15, 16, 17, and 18 be and the same are hereby **SUPPRESSED**; and

2. In all other respects, the instant Motion be and the same is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___22nd___ day of December, 2008.

/s/ William J. Zloch
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record